**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

In re:                                                           **Case #: 09-30754-LMK**
                                                                      **Chapter 13**
**DAVID WAYNE HECKLER AND
ELIZABETH ANN HECKLER,**

         **Debtors.**

_____

**DAVID WAYNE HECKLER AND
ELIZABETH ANN HECKLER,**

         **Plaintiffs,**

**v.**                                                          **Adversary #: 11-3022-WSS**

**ENRICO G. GONZALEZ, P.A.,
LENDER PROCESSING SERVICES,
INC., LPS DEFAULT SOLUTIONS,
INC.,**

         **Defendants.**

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, ENRICO G. GONZALEZ, P.A.'S MOTION TO DISMISS AMENDED COMPLAINT

Gonzalez, pursuant to N.D. Fla. LBR 9013-1, and N.D. Fla. Loc. R. 7.1(A)

(incorporated by LBR 1001-1(D)), hereby submits the following Memorandum of Law in

support of its contemporaneously filed Motion to Dismiss Amended Complaint filed by

Debtors/Plaintiffs, David W. Heckler and Elizabeth Ann Heckler ("Hecklers") against

Enrico G. Gonzalez, P.A. ("Gonzalez"), Lender Processing Services, Inc. (LPS), and LPS

Default Solutions, Inc. ("LDSI").  LPS and LDSI may be collectively referred to hereinafter as the "LPS Defendants."

### I.   Introduction

The Hecklers filed this adversary proceeding against Gonzalez and the LPS Defendants on behalf of a putative class of debtors who have filed bankruptcy under any chapter of the Bankruptcy Code where either of the Defendants have filed a proof of claim, a stay relief motion or where they sought and received a plan review fee in which they allegedly split fees and sought fees not disclosed to a bankruptcy court.  Doc. 5, Amended Complaint at ¶ 133.[1]  The Hecklers seek declaratory and injunctive relief and unspecified monetary damages for alleged violations of various sections of the Code, Fed. R. Bankr. P. 2016(a), 18 U.S.C. § 155, and for breach of the Mortgage Contract between the Hecklers and the creditor, Beneficial.

The Amended Complaint must be dismissed in its entirety and with prejudice for multiple reasons, all of which are fatal to the Amended Complaint.  First, this Court lacks subject matter jurisdiction to entertain the damages claims asserted by the Hecklers. Second, many of the counts allege causes of action that do not exist, and the others allege facts that are belied by the very documents attached to it or simply fail to state a claim for which relief can be granted.

---

[1] It is not disputed that Gonzalez filed the Motion Seeking Relief From the Automatic Stay and/or for Adequate Protection of Beneficial Florida, Inc. (Doc. 62) and Beneficial Florida, Inc.'s Motion for Final Order of Relief From Stay (Doc. 91) in the main case (Case No. 09-30754-LMK) on behalf of Beneficial Florida, Inc. ("Beneficial").  The Hecklers do not allege that Gonzalez charged or was paid a "plan review fee" or filed a proof of claim.

As indicated above, and discussed at greater length below, the Hecklers assert numerous non-existent causes of action.  For these claims, the Court need not even consider whether the "facts," as pled, meet the plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and may instead simply dismiss them as not stating a claim upon which relief can be granted.  *See, e.g., Morrison v. Anadarko Petroleum Corp.*,  2010 WL 2721397, *3 (W.D. Okla. July 6, 2010).

This adversary proceeding, and all of its claims and assertions against Gonzalez and the LPS Defendants, is premised entirely upon the invalid contention that the amounts paid for services and software usage rendered by one or more of the LPS Defendants to Gonzalez are impermissible fee-splitting.  The Hecklers seek to leverage this invalid premise into ten counts in which the Hecklers and a putative class of similarly situated persons seek unspecified damages and other declaratory and injunctive relief.  At its most basic level, the Hecklers contend that it is improper for an attorney to pay a vendor for services rendered if the funds which pay the vendor derive from "fees" paid to the lawyer by clients.

Even as characterized in the Amended Complaint at ¶ 75, the services and technology provided by the LPS Defendants to "Network Attorneys" (such as Gonzalez) and their clients are tools to facilitate case management, just like those offered by an entire and growing segment of the legal software industry.  The expense of the services and technology provided by the LPS Defendnats to Network Attorneys such as Gonzalez and their clients is akin to software licensing fees.  Those fees, just like software licensing fees paid for document management software, case management software, accounting software, time and billing software, telephone and voicemail software, the electronic

billing software required by a growing number of clients, and a host of other examples are all simply part of the attorney's cost of doing business like any other type of overhead. The clients require the services and technology to be used by the Network Attorneys (just as some clients require electronic billing), as it is their chosen means of case management, and the cost is absorbed by the firms just like other overhead expenses. This is functionally identical to other types of expenses incurred by law firms that are not traditionally "taxable" as costs in legal proceedings, including bankruptcy cases, and are therefore never found in a request for an award of fees and costs any more than rent would be. The source of funds used to pay these expenses is the fees received by law firms from their clients because fee income is the overwhelmingly predominant source of revenue for any law firm.

Most fundamentally, this Court lacks subject matter jurisdiction to enter a money judgment for damages. *See Red Carpet Corp. of Panama City Beach v. Miller (In re Red Carpet Corp. of Panama City Beach)*, 708 F.2d 1576 (11th Cir. 1983) (per curiam).[2] Plaintiffs' sole remedy, if any, would be to seek disgorgement of the fees and costs awarded to the creditor, Beneficial, in the underlying bankruptcy case. *Id.*

To support their purported class action suit, the Hecklers assert numerous claims that simply do not exist, such as "contempt of the Code," "contempt of the Rules," unauthorized practice of law and violation of 18 U.S.C. § 155. These claims should immediately be dismissed with prejudice.

---

[2] While *Red Carpet of Panama City Beach* was decided under the Bankruptcy Act, it has been cited for the same proposition after the adoption of the Bankruptcy Code. *See Matter of Concrete Products, Inc.*, 1992 WL 12001764, at *19 (S.D. Ga. 1992).

To the extent that some of the claims asserted in the Amended Complaint are actually recognized causes of action, they each fail to state a cause of action as addressed herein.

The Amended Complaint, which is comprised of claims premised upon the Plaintiffs' re-characterization of the payment of administrative services fees by Gonzalez to the LPS Defendants as an improper fee-splitting agreement, is one of numerous similar lawsuits against the LPS Defendants and various law firms[3]

Plaintiffs' Amended Complaint is fundamentally flawed and cannot stand, and should be dismissed in its entirety with prejudice.

## II.   **Procedural History**[4]

---

[3] One or more of the same attorneys that filed this adversary proceeding have filed adversary proceedings asserting similar and/or directly related claims on behalf of other Chapter 13 debtors and putative class members in this district (among others): (i) *Robert Ray Williams v. Law Offices of Marshall C. Watson, P.A., Lender Processing Services, Inc. and LPS Default Solutions, Inc. (In re Robert Ray Williams),* Adv. Pro. No. 11-3027 (Bankr. N.D. Fla.); (ii) *Susan Marie Harris v. Ben-Ezra & Katz, P.A., Lender Processing Services, Inc. and LPS Default Solutions, Inc. (In re Susan Marie Harris)*, Adv. Pro. No. 11-3021 (Bankr. N.D. Fla.); and (iii) *Preston Lee Hanna and Rita Lee Hanna v. Law Office of Daniel C. Consuegra, P.A. (In re Preston Lee Hanna and Rita Lee Hanna),* Adv. Pro. No. 11-3030-LMK (Bankr. N.D. Fla.).

[4] Gonzalez requests that the Court take judicial notice pursuant to Fed. R. Evid. 2101, of all pleadings, claims and other matters of record in the Hecklers' bankruptcy case cited herein.  These materials are part of the public record, and do not contradict the allegations of the Complaint, and so are properly considered in deciding a Rule 12(b)(6) motion to dismiss.  *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (citing *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); *Hollis v. United States Dept. of Army*, 856 F.2d 1541, 1543-44 (D.C. Cir. 1988)).  *See also Rondigo, L.L.C. v. Township of Richmond*, _____ F.3d _____, 2011 WL 2135509, *6 (6th Cir. 2011); *Halebian v. Berv*, _____ F.3d_____, 2011 WL 1707184, *8 (2d Cir. 2011); *Stratte-McClure v. Stanley*, _____ F.Supp. 2d _____, 2011 WL 1362100 (S.D.N.Y. 2011).  In the 11th Circuit the rule is substantially the same.  *See Speaker v. U.S. Dept. of Health & Human* Svcs, 623 F.3d 1371, 1379-80 (11th Cir. 2010); *Halmos v. Bombardier Aerospace Corp.*, 404 Fed.Appx. 376, 377, 2010 WL 4941957 (11th Cir. 2010).  The documents from the court file in the underlying bankruptcy proceeding are "central to the plaintiffs' claim" because the claim

On April 17, 2009, the Hecklers filed a Chapter 13 case in this court. The Hecklers filed their Chapter 13 Plan on the same date (Main Case No. 09-30754-LMK, Doc. 2), naming Beneficial as a creditor. The First Amended Chapter 13 Plan (Doc. 37) (the "Plan") was confirmed by Order entered on October 13, 2009. (Doc. 50). The Plan called for pre-petition arrearages under Beneficial's mortgage to be cured through the plan, but post-petition payments would be made *outside the plan*, directly to Beneficial. Plan, at ¶ 6.

On February 13, 2010, four months after entry of the Confirmation Order, Beneficial, through Gonzalez, filed its Motion Seeking Relief From the Automatic Stay and/or for Adequate Protection of Beneficial Florida, Inc. (the "Stay Relief Motion") (Doc. 62) seeking relief from the stay under both 11 U.S.C. § 362(d)(1) (asserting "cause" due to the Debtors' failure to make post-confirmation payments to Beneficial and a lack of adequate protection), and under § 362(d)(2) (because the Hecklers had no equity in the property, with the principal amount of debt being $165,362.56 and collateral value of $114,619.00, and that the property was not necessary to an effective reorganization), to permit Beneficial to foreclose its mortgage on the Debtors' home. The Stay Relief Motion also requested the Court to enforce the terms of the note and mortgage by awarding Beneficial's reasonable attorneys' fees and costs.

The Debtors responded to the Stay Relief Motion (Doc. 67), admitting "being behind on the mortgage" (Aff. Def. 2); proposing a method for curing the arrearage to bring the mortgage current, including paying "all reasonable attorneys fees and costs . ..

---

arises out of the very documents referenced herein, and their authenticity is not disputed and can be determined immediately by reference to the Court's own file. Indeed, the Amended Complaint refers generally and inferentially to these documents, but does not attach them. *See* Amended Complaint at ¶ 83.

"in full" (Aff. Def. 4); and stating that they were "not opposed to some type of stipulation regarding adequate protection."  A telephonic hearing was held on the Motion and Response on March 8, 2010 (Doc. 68).

The day following the telephonic hearing, the Court entered an order conditionally continuing the automatic stay provided that the Hecklers comply with the portions of the order granting Beneficial adequate protection (Doc. 71) (the "Adequate Protection Order").  The Adequate Protection Order required the Hecklers to cure the arrearages in their mortgage payments by making additional payments beginning April 1, 2010, and to make the monthly payments beginning March 15, 2010.  The amounts to cure the arrearage included $700 for attorney fees and costs that Beneficial was required to incur for Gonzalez to prepare and prosecute the Stay Relief Motion.  The Stay Relief Motion is the *only* pleading filed by Beneficial, through Gonzalez, seeking reimbursement of attorneys' fees or costs for work Gonzalez did in connection with the Debtors' Chapter 13 case.

The Hecklers failed to comply with the Adequate Protection Order, as a result of which Beneficial, through Gonzalez, filed a Motion for Final Order of Relief From Stay (Doc. 91), which was silent with regard to seeking any additional fees or costs.  The Motion noted that the Hecklers had failed even to make the first payment on March 15, 2010, required by the Adequate Protection Order, and the Court entered an Order Granting Final Relief From Stay to Creditor Beneficial Florida, Inc. (the "Final Order") (Doc. 93).

For purposes of the Hecklers' current claims and the instant Motion, three things are of interest in the Final Order: (1) the Final Order makes no provision for Beneficial to

receive its additional costs or fees incurred as a result of the original Stay Relief Motion or the subsequent proceedings to obtain the Final Order; (2) the Final Order was limited expressly to *in rem* relief; and (3) because the Final Order was predicated on the Court's determination that the Debtors had failed even to make the ***first*** payment required pursuant to the Adequate Protection Order, we do not know from the allegations in the Amended Complaint whether any part of the $700 in fees and costs the Debtors agreed to pay as part of the burden to cure the post-petition arrears was ever paid.[5]  On this basis alone, Plaintiffs fail to state a cause of action because they have not alleged any cognizable damages or established standing.[6]

### III.   Statement of Facts

The "facts" set forth below are taken from the allegations contained in the Amended Complaint (and the Network Agreement attached thereto).  Generally, allegations in a complaint are accepted as true for purposes of a Rule 12(b)(6) motion. *Rehberg v. Paulk*, 611 F.3d 828, 834 n.1 (11th Cir. 2010).  However, a trial court is ***not*** bound to accept as true conclusory allegations and unwarranted deductions of fact, and that where allegations in a complaint are contradicted by exhibits attached thereto the exhibits control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

---

[5] See ¶¶ 83 and 84 of Amended Complaint.

[6] This Motion does not address the "merits" of the Hecklers request for class treatment of their claims other than to note that because decisions as to particular purported class members would require individual determinations based upon the facts in individual cases, certification would be inappropriate.  Specifically, the determination of whether Gonzalez omitted information from the varied motions it filed must by definition be determined on a case by case basis.  While premature at this stage, Gonzalez reserves the right to oppose certification of any class of debtors on any grounds, including those identified above.

The Hecklers allege that LPS and LDSI are "vendors" or "subservicers" to various national mortgage servicers and provide technology and related services through subsidiaries. Amended Complaint, ¶¶ 12 and 14. The Debtors allege that some mortgage servicers, in addition to contracting with the LPS Defendants for licenses to use software to manage their loans, contract with LDSI to perform specific mortgage servicing tasks related to delinquent, defaulted or bankrupted mortgage loans. *Id.,* ¶ 25. The Debtors contend that LDSI does not charge the mortgage servicer clients any fee for services LDSI provides. *Id.,* ¶ 38.

The Network Agreement sets forth services LDSI provide to lenders-loan servicers and their counsel in exchange for a technology fee and an administrative support fee. *Id.,* ¶¶ 52, 54. These include fees associated with services provided in connection with a stay relief motion, plan review and proof of claim in the bankruptcy court, *id.,* ¶¶ 57, 58; however, there is no allegation that either LPS or LDSI actually drafts or files stay relief motions or other pleadings. The Hecklers contend that this arrangement constitutes an "express fee splitting agreement." *Id.,* ¶ 69.[7]

In support of these contentions, the Debtors cite to portions of William Newland's deposition transcript. Amended Complaint, ¶ 57 and Ex. 3 thereto. Mr. Newland's

---

[7] There is, in fact, no fee-splitting agreement, "express" or otherwise, through the Network Agreement. Note 9, *infra,* and pp. 7-8. Because the allegation that there is an express fee-splitting agreement is a conclusory allegation and/or an unwarranted deduction of fact, and more importantly because the Network Agreement attached to the Amended Complaint, including Exhibit B thereto, contradicts the "express" fee-splitting allegation in the Amended Complaint, the Court is not bound to (and should not) accept that allegation as true for purposes of this Rule 12(b)(6) Motion. *See Griffin Indus.,* 490 F.3d at 1206. Similar allegations are made in other parts of the Complaint, for example, ¶96 (making reference to a "contractual[] agree[ment] to split legal fees with non-lawyers....") and ¶120 (making reference to "express fee-splitting agreements").

deposition testimony, however, directly contradicts the fee-splitting allegation.  Mr.

Newland testified that the *only* fee paid to LDSI is the flat fee it charges for administrative

services rendered in favor of lenders-loan servicers and their counsel, and that

administrative fee is *not* based upon the attorneys' fees charged by the Network

Attorneys.

> Q.    You did indicate that LPS Default Solutions charges *an*
>        *administrative support fee* to the attorney who is the network
>        attorney assigned to the foreclosure?
> A.    Yes.
> Q.    What we were trying to establish at the point in time we had
>        to take that break was *how is that fee determined,* and I think
>        you indicated that it was a flat fee.
> A.    Yes.
> Q.    And that it was – *is it based upon the fee the attorney charges,*
>        or is it –
> A.    *no.*
> Q.    -- based upon some other factor?
> A.    *it's just based on the services we provide* with the attorney.

Newland Dep., Amended Complaint, Exhibit 3, at 150:25-151:15 (Emphasis added).  Mr.

Newland's testimony is attached as an exhibit to the Amended Complaint and that

testimony directly contradicts the allegations that there exists a fee-splitting agreement.

As such, the Court need not (and should not) accept that allegation as true, but rather

should proceed on the assumption, consistent with Mr. Newland's quoted testimony, that

LDSI's administrative fee is *not* based upon the attorneys' fee charged by the Network

Attorney which testimony is contained in a transcript attached to the Amended Complaint

and, therefore, governs.  *See Griffin Indus.*, 496 F.3d at 1206.

The Debtors argue that the Network Agreements attempt to disguise what are in

fact attorneys' fee sharing and referral agreements by characterizing the fees paid by

Network Attorneys to LDSI as administrative fees. *Id.,* ¶ 70.[8]  The list of services LDSI

allegedly promises to lenders-loan servicers and their counsel are set forth in paragraph

75 of the Amended Complaint (and Exhibit "A" to the Network Agreement). *Id.,* ¶ 75.

However, *none* of those services includes drafting or filing of a motion for relief from stay

or any other pleading for that matter—the closest service related to a stay relief motion is

that LDSI will "*monitor* the status of an applicable motion for relief from stay." *Id.,* ¶ 75 (at

21, Item "U") (Emphasis added).  There is no allegation of any rendering of legal advice.

The Hecklers allege that the "attorney fee splitting and referral agreements are. .

. a violation of Rule 2016 of the U.S. Bankruptcy Code," "Section 504 of [sic] U.S.

Bankruptcy Code," Section 155, and Code Section 1362(a).[9] *Id.,* ¶¶ 77-80.  The Debtors

allege that "[c]reditors routinely recover attorneys' fees for legal services performed in

bankruptcy proceedings," including stay relief motions, and those monies are paid from

the estate, and here Beneficial filed such a motion and was awarded "$_____" [sic] in

attorneys' fees and costs. *Id.,* ¶¶81-83.  The Debtors allege that pursuant to the Network

Agreement, LDSI received a portion of those fees.[10] Id., ¶84.

---

[8] The Court need not accept this allegation as true because it is conclusory in
nature and/or an unwarranted deduction of fact. *See Griffin Indus.,* 490 F.3d at 1206.

[9] There is no Code section "1362(a)."

[10] This allegation is also contradicted by the terms and conditions of the Network
Agreement, including Exhibit B thereto, which sets out a schedule of flat fees to be
charged for services rendered to lenders-loan servicers and their counsel.  More
fundamentally, there is simply no provision in the Network Agreement directing or
authorizing that any fees recovered by the creditor are to be shared with LDSI (or LPS) or
making such fees contingent upon recovery from the borrower of fees due and owing to
counsel.  As such, this Court is not bound to (and should not) accept as true the allegation
that LDSI received a portion of the attorneys' fees awarded to Beneficial in connection
with the Stay Relief Motion filed on its behalf by Gonzalez (or any other Network
Attorney pursuant to any other Network Agreement).  *See Griffin Indus.,* 490 F.3d at
1206.

## IV.    Argument

The Court lacks subject matter jurisdiction to award damages even if there was an improper agreement (which there was not).  Moreover, if the Court possessed jurisdiction, many of the "claims" asserted are simply not recognized causes of action.  The remaining claims are inapplicable to the facts here or fail to state a cause of action.  All of the claims should be dismissed with prejudice.[11]

### A)    The Court Lacks Subject Matter Jurisdiction to Award Damages.

The basis for all the claims asserted by the Debtors is the purported existence of an illegal fee-splitting agreement.  Even if the Network Agreement did constitute illegal fee-splitting, this Court lacks subject matter jurisdiction to award damages, and is limited to denying or ordering disgorgement of fees in the bankruptcy proceeding in which they were awarded – a relief not requested by the Amended Complaint.[12]  *See Red Carpet Corp., supra* at 3 (affirming district court's affirmance of bankruptcy court's order that it lacked jurisdiction to award damages for, *inter alia*, fee-splitting beyond denial of fees sought by debtor's counsel); *see also, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463 (2d Cir. 1981) (ordering disgorgement of fees

--------------------------------

[11] Further, the Amended Complaint improperly lumps the Defendants together for virtually all purposes, including each asserted cause of action, without delineating which Defendant took what action(s) and how that action(s) worked a violation of a particular Code section, Rule, etc.  *See Mukamal v. Bakes*, 383 B.R. 798, 826-27 (S.D. Fla. 2007), *aff'd*, 378 Fed. App'x 890 (11th Cir. 2010).  Thus, if the Court does not dismiss the Amended Complaint with prejudice as requested herein the Court should require the Plaintiffs to file a further amended complaint that attributes specific alleged actions to the applicable Defendant so that the Defendants have notice of the specific actions they are alleged to have taken as it relates to the claims asserted against them so they can adequately defend themselves.

[12] The same would apply to each member of the purported class.  Each debtor would be required to seek disgorgement in each individual bankruptcy proceeding, eliminating any viable possibility of class treatment.

earned by debtor's counsel based on fee-splitting).  All of Plaintiffs' claims for damages should be dismissed for lack of jurisdiction.

**B)**     **The Court Should Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can be Granted.**

(i)     Rule 12(b)(6) Standards

In considering a Rule 12(b)(6) motion, a trial court is to accept as true all factual allegations in the complaint and the reasonable inferences therefrom.  *Rehberg*, 611 F.3d at 834 n.1; *Venezia Amos, LLC v. Favret*, 2008 WL 410163, *9 (N.D. Fla. Feb. 12, 2008).  A plaintiff must, however, supply "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, _____ U.S. _____, 129 S. Ct. 1937, 1949 (2009).  A "court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted deductions or facts or legal conclusions masquerading as facts." *Sarver v. Jackson*, 344 Fed. App'x 526, 527 n.2 (11th Cir. 2009) (quotation omitted).

(ii)     LDSI's Arrangement With Network Attorneys, Including Gonzalez, is Legal and Valid

The Hecklers attempt to fill the Amended Complaint with every law or rule remotely related to fee-splitting, without regard for the applicable law or the facts.  Nothing alleged by the Hecklers prohibits the business relationship between LDSI and its Network Attorneys such as Gonzalez.  As conceded by Plaintiffs (Amended Complaint at ¶¶ 71, 74, 75), LDSI provides a variety of administrative services to lenders-loan servicers and their counsel, and in return LDSI charges the Network Attorneys a small, flat fee which is payable regardless of whether the Network Attorneys are paid by the lender or

mortgage servicer, or whether the lender or mortgage servicer is awarded fees and costs from the bankruptcy estate. *See Amended Complaint,* ¶ *75;* Exhibit 4.  Gonzalez knows of no statute or rule, in bankruptcy or otherwise, that prohibits an attorney from compensating a vendor for services rendered.  Indeed, if the services provided by LDSI are improper fee splitting because they are paid out of a law firm's "fee income" then agreements with Westlaw, Lexis, copy machine leases, and computer software license are all equally violative of "fee splitting" rules.

> (iii)    Several Asserted Causes of Action Simply Do Not Exist, So Dismissal With Prejudice of Such Causes of Action Is Appropriate

The Hecklers base Counts 1 ("Abuse of the Bankruptcy Process"), 2 ("Fraud on the Court"), 3 ("Declaratory and Injunctive Relief"), 5 ("Contempt of the Bankruptcy Code"), and 6 ("Contempt of the Federal Rules of Bankruptcy Procedure"), upon an attempt to invoke 11 U.S.C. § 105 and the "inherent" power of this Court to support their private cause of action.  Amended Complaint at ¶¶ 162, 165, 172, 182, 184, and 195.  Within these counts are also references to the Court's contempt powers under § 105.  Amended Complaint at ¶¶ 162, 182, 183, 184, 185, 188, 195, 196, 207, and 208.

It is well established, that § 105 does not create or provide a basis for a private right of action.   *In re Joubert*, 411 F.3d 452, 455-56 (3d Cir. 2005); *In re Dairy Mart Conven. Stores, Inc.*, 351 F.3d 86,  91 (2d Cir. 2003); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000); *Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38 44-45 (E.D. Cal. 2000), *aff'd*, 276 F.3d 502 (9th Cir. 2000); *Holloway v. Household Auto. Finance Corp.*, 227 B.R. 501, 505-07 (N.D. Ill. 1998).

{A0887446.DOC }

*Joubert* is perhaps most instructive of the cases cited.  In it, the Third Circuit affirmed the District Court's dismissal of a putative class action "seeking damages and injunctive relief to combat what [the plaintiff contended] . . . is a widespread practice by mortgagees of assessing, without notice to mortgagors, post-petition, pre-confirmation attorney fees." 411 F.3d at 453.  The plaintiff, a Chapter 13 debtor like the Hecklers, claimed that such fee assessments were violative of § 506(b) of the Bankruptcy Code, and asserted that a private right of action was "implied" under § 105(a) of the Code.  The Court, citing, *inter alia*, *Pertuso* and *Walls* affirmed the District Court's dismissal on the basis that § 105(a) did not create or "imply" a private cause of action.  Further, if the debtor felt that the discharge injunction of § 524 of the Code was violated, the remedy was to assert a contempt action in the original bankruptcy proceeding.  411 F.3d at 456-57.  Essentially the identical theory was also rejected in *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 603 (E.D. Pa. 2006).

Accordingly, aside from a potential contempt proceeding (discussed below in the context of Counts 5 and 6 which assert "Contempt of the Bankruptcy Code" and "Contempt of Federal Rules of Bankruptcy Procedure"), all counts which purport to use § 105 as the basis for a private cause of action, must be dismissed with prejudice, specifically, Counts 1, 2, 3, 5, and 6.

(iv)    Count I Fails to State a Cause of Action for "Abuse of the Bankruptcy Process"

While some courts have recognized that an abuse of the bankruptcy process *might* state a cause of action, such a claim cannot lie here against Gonzalez.  What the Hecklers allege is in effect a state law claim for abuse of process applied to a bankruptcy proceeding.

Generally, "[a]buse of process requires use of legal process against another, primarily to accomplish a purpose for which it was not designed. Abuse of process does not deal with the issuance of process; instead, it deals with the **use of process** after issuance for an improper purpose. A willful misuse of process for an unlawful objective or collateral purpose constitutes abuse of process. However, where legal process is used to accomplish its designed purposes, there is no abuse of process." *Captran Creditors Trust v. North Am. Title Ins. Agency, Inc. (In re Captran Creditors Trust)*, 116 B.R. 845, 853 (Bankr. M.D. Fla. 1990) (Emphasis added). There are three elements to this claim: "First, it must be shown that the defendant made an illegal, improper, perverted use of the process which was neither warranted nor authorized by the process. Second, it must be shown that the defendant had an ulterior motive or purpose in exercising that illegal, improper, perverted use of the process. Finally, the plaintiff must prove that damages were incurred by the irregularity." *Id.*; *Valdes v. GAB Robins No. Am.*, 924 So. 2d 862, 867 n.2 (Fla. 3d DCA 2006) (same).

To the extent some courts have stated that a claim for abuse of the bankruptcy process might lie, the facts in this case do not plausibly approach the level of egregious behavior that would give rise to such a claim. For example, in *Walton v. Countrywide Home Loans, Inc.*, 2009 WL 1905035 (S.D. Fla. June 9, 2009), the U.S. Trustee filed a complaint alleging that Countrywide filed a stay relief motion containing false representations (representing a pattern of conduct) and had initiated a foreclosure suit against Chapter 13 debtors despite a confirmed plan and discharge order. The Trustee sought monetary sanctions and injunctive relief. The district court characterized the alleged conduct as an abuse of the bankruptcy process and reversed the bankruptcy

court's ruling that injunctive relief did not lie.  While demonstrating the egregiousness required to sustain such a claim, this case inversely demonstrates that absence here.  In *Walton*, the allegations involved claims against entities that, through counsel, affirmatively used the court process by filing pleadings and claims in ***direct contravention*** of a confirmed plan and a discharge order, which is not the case here.

In this case the "process" at issue utilized by Gonzalez in this case was the original Stay Relief Motion,[13] not a state court foreclosure process filed in violation of a confirmed plan and discharge order.  Further, the relief sought in the Stay Relief Motion was ***denied***, conditioned upon the ***Hecklers'*** compliance with the Adequate Protection Order.  The Hecklers failed to make the very first payment under the Adequate Protection Order, and appear never to have paid the attorneys fees and costs order by the Court (so no damage can be proven).

Under those facts, there can be no plausible basis for an abuse of process claim. The Hecklers cannot plausibly claim that the ***primary*** reason for the Stay Relief Motion was ***not*** for Beneficial to obtain relief from the automatic stay to foreclose a woefully undersecured mortgage which was admittedly in default, but rather was ***only*** so that Gonzalez could obtain an order requiring the Hecklers to reimburse Beneficial for a $700 fee paid to Gonzalez which the Hecklers apparently never paid.  Such a claim can never pass the *Twombly* and *Iqbal* plausibility tests.  Accordingly, Count 1 cannot state a cause of action and should be dismissed with prejudice.

---

[13] This Motion was the only "process" under which any fees were awarded to Beneficial.

{A0887446.DOC }

(v)     Count 2 Fails to State a Cause of Action for "Fraud on the Court"

There is no independent cause of action for "fraud on the court" other than to seek relief from judgment as authorized by Rule 60(b), Fed. R. Civ. P. (Fed. R. Bankr. P. 9024), or through an independent action seeking that same relief after the time to move for relief under Rule 60(b) (Bankr. R. 9024) has expired. *Florida Evergreen Foliage v. E.I. Du Pont Nemours and Co.*, 135 F. Supp. 2d 1271, 1287-89 (S.D. Fla. 2001) (rejecting the proposition that a claim for damages lies for fraud on the court other than an independent action for relief from judgment after the time to move for that relief under Rule 60(b) has lapsed); *see also Anderson v. Roszkowski*, 681 F. Supp. 1284, 1292 (N.D. Ill. 1988) ("this Court does not have subject matter jurisdiction to award money damages for fraud on the court."), *aff'd*, 894 F.2d 1338 (7th Cir. 1990).  Here, the only "order" as to which the Hecklers allege "fraud" is the Adequate Protection Order which the Hecklers themselves violated.  The Hecklers have not sought, nor does the Amended Complaint seek, any relief from the Adequate Protection Order or any other order.

Even were this not the case, an independent cause of action for relief from judgment based upon fraud upon the court must be based upon extrinsic fraud, not upon an alleged misrepresentation made during the course of judicial proceedings.  In *The Travelers Indemnity Corp. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985). The Eleventh Circuit stated, in part, that "'[f]raud on the court' . . . embrace[s] only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *Id.* (quotation omitted).  Allegations of fraud or

misrepresentations as between the parties is not extrinsic fraud sufficient to support an independent action (as opposed to a motion for relief from judgment). *Id.* at 1552 (affirming dismissal complaint notwithstanding allegation that defendant committed perjury in obtaining of judgment, that is, use of a preconceived scheme to use the judicial system to defraud the plaintiff).

In *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978), the former Fifth Circuit explained that "[g]enerally speaking, only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud upon the court. . . . Less egregious misconduct such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Id.* "The alleged fraud in this case did not prevent the [Debtors] from gaining access to an impartial system of justice," *In re Walker*, 356 B.R. 861, 869 (Bankr. S.D. Fla. 2006); *see also Rozier*, 572 F.2d at 1342, or alter their counsel's approach to the presentation of the Plan (which the Court **confirmed**). Even taking Plaintiffs' allegations as true, that Gonzalez was required to and failed to file an application for compensation, there was no fraud on the Court, actionable or otherwise, and that claim should be dismissed with prejudice.

### (vi)   Count 3 Fails to State a Cause of Action for Declaratory and Injunctive Relief

Under the appropriate circumstances, a bankruptcy court can issue declaratory and injunctive relief. *See* Fed. R. Bankr. P. 7001(9) and 7001(7). However, the Hecklers are not entitled to such relief here. "It is well-settled that equitable relief is available only in the absence of an adequate remedy at law." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronics, S.A.*, 243 Fed. App'x 502, 503 (11th Cir. 2007) (quotation omitted). To

the extent that Plaintiffs wish to contest any award or approval of attorneys' fees (assuming that they ever paid the fees awarded in the Adequate Protection Order which they apparently did not), their remedy would be to seek disgorgement of fees and costs awarded to Beneficial in connection with Gonzalez's preparation, filing and prosecution of the Stay Relief Motion.  Regardless of whether legal relief is available, and the Hecklers could establish the other requirements for issuance of an injunction, including the likelihood of success on the merits (which they could not), the Court should deny the relief requested for the additional reasons stated below.

According to the Eleventh Circuit, a "prayer for injunctive and declaratory relief requires an assessment . . . of whether the plaintiff has sufficiently shown a *real and immediate threat of future harm*." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (Emphasis added).  Continuing, the Eleventh Circuit explained that "binding precedent in this circuit is clear that for an injury to suffice for prospective relief, *it must be imminent*." *Id.* (Emphasis added).  "Because of the inquiry's focus on wholly prospective conduct, it follows that [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Elend*, 471 F.3d at 1207-08 (quotations omitted).  In short, there is no allegation, much less any showing, of real and immediate or imminent threat of future harm if the complained of conduct is not proscribed.  The allegation of prior illegal conduct, entry into a purported fee-splitting agreement, does not in and of itself, as urged by the Plaintiffs, justify the issuance of declaratory and injunctive relief.  *See id.* Moreover, because there is nothing unlawful or otherwise inappropriate in the underlying business relationship between LDSI and Network Attorneys such as Gonzalez pursuant to

Network Agreements, there is no conduct that can or should be the subject of declaratory and/or injunctive relief.  Because the underlying claims fail, there is no basis upon which the Court can or should issue declaratory or injunctive relief as requested, and so Count 3 must also be dismissed with prejudice.

(vii) Count 4 Fails to State a Cause of Action for Violation of the Automatic Stay

First, given the procedural history and the allegations of the Amended Complaint, the Hecklers appear never to have paid the fees and costs awarded in the Adequate Protection order – payments which were *post-confirmation* payments to be paid directly to the creditor, *outside of the Plan*, and were therefore *never property of the estate* – even if the Hecklers had made them.  Second, the Adequate Protection Order did not direct any payment directly to Gonzalez, but rather to Beneficial to reimburse it for fees and costs already paid.  Third, even if estate funds had been paid to Beneficial, and then to Gonzlaez, who then paid fees to LDSI, once those funds were received by Beneficial and deposited in Beneficial's account those funds lost their character as property of the estate rendering invalid the Hecklers' claim.

Code Section 362(k)(1) provides, in relevant part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."  This is the *only* section of the Code or Rules cited in the Amended Complaint that provides for a private right of action.  Relevant here is Section 362(a)(3), which involves actions to possess or control property of the estate, that is, purportedly illegal fees paid from the estate to Beneficial that allegedly were paid to Gonzalez and then allegedly split with one or both of the LPS Defendants.

Because the payments which were the subject of the Stay Relief Motion and the Adequate Protection Order were post-confirmation payments which were to have been made outside the Plan, and directly to the creditor, the funds which would have been used for such payments were not property of the bankruptcy estate. *Telfair v. First Union Mortgage Corp. (In re Telfair)*, 216 F.3d 1333, 1340 (11th Cir. 2000). *See also In re Rodriquez*, 367 Fed. Appx. 25, 27 (11th Cir. 2010); *Muse v. Accord Human Resources, Inc.*, 129 Fed. Appx. 487, 489-90 (11th Cir. 2005); *In re Han*, 2005 WL 2456933 (Bankr. N.D. Fla. 2005). By the same logic, the adequate protection payments directed in the Adequate Protection Order would be from funds which would never have been property of the estate, and so the automatic stay was never implicated as to such funds and payments.

However, because Gonzalez never received property of the estate (both as a matter of law, and because the Hecklers appear never to have made the payment under the Adequate Protection Order) there is no violation of the stay and, therefore, this claim should be dismissed with prejudice. Even had estate funds been paid to Beneficial, and then paid to Gonzalez for his services rendered to Beneficial in drafting and prosecuting the Stay Relief Motion, and then Gonzalez paid administrative fees to LDSI, once the funds were received by Beneficial and deposited into Beneficial's account they lost their character as property of the estate. *See Olick v. Northhampton Cty. (In re Olick)*, 2010 WL 4509828 (Bankr. E.D. Pa. Nov. 9, 2010) (granting defendant's motion for summary judgment, court concluded, in part, that acceptance of payments by County from debtor's mortgage lender of unpaid real estate taxes including taxes provided for in the confirmed chapter 13 plan did not violate automatic stay because the funds were not

estate property, so there was no possession or act to control such property); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 367-69 (Bankr. S.D. Tex. 2009) (rejecting plaintiff's claim that lender's misapplication of payments worked a violation of the stay, reasoning in part that once funds were paid to lender they were no longer estate property and lender could apply them as it saw fit without violating stay (even if such application violated terms of confirmed plan) and rejecting decisions holding otherwise). *See also Telfair v. First Union Mtg. Corp. (In re Telfair)*, 224 B.R. 243, 248 (Bankr. S.D. Ga. 1998) ("once the payment is made, that is tendered to the creditor pursuant to the plan, the payments were no longer property of the estate. ***The payment becomes property of the creditor.***"), *aff'd*, 216 F.3d 1333 (11th Cir. 2000) (Emphasis added). Indeed, citing *Telfair*, Judge Mahoney sitting in ***this very court*** has held the same. *In re Han*, *supra*, at *3.

As such, the Court should dismiss the claim based on an alleged violation of the automatic stay with prejudice.

> (viii)    Counts 5 and 6 Fail to State a Cause of Action for Contempt of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure
>
> (a)    *No Viable Cause of Action Can be Stated for Contempt.*

Under Counts 5 and 6, which respectively assert causes of action for damages for "contempt" of the "Bankruptcy Code" (Count 5), and of the "Federal Rules of Bankruptcy Procedure" (Count 6), the question turns to whether or not, under the facts as alleged, any "contempt" proceeding may be maintained since no private right of action is possible. The Amended Complaint simply refers generally to the undisputed contempt power of this Court under § 105 of the Code; however, it overlooks the limitations on this contempt

power (and indeed the contempt power of any federal court) under 18 U.S.C. § 401,

which provides as follows:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, ***and none other***, as -
>
> (1)     Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2)     Misbehavior of any of its officers in their official transactions;
>
> (3)     Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

(Emphasis added.)

In *Boyd v. Glucklich*, 116 F. 131 (8th Cir. 1902), the court rejected the contention

that the provision of the Bankruptcy Act which provided for contempt gave the Bankruptcy

Court any power broader or beyond that possessed by the District Court.  116 F. at 135.

Put simply, "Any act, matter, or thing which any United States court may punish as a

contempt may be punished as such by a court of bankruptcy; and any act, matter, or thing

which cannot be punished as a contempt by other United States courts cannot be punished

as such by a court of bankruptcy."  *Id.*  Thus, any contempt proceeding, must fall within one

of the three categories found in 18 U.S.C. § 401.

The first sub-section, "Misbehavior of any person in its presence or so near thereto

as to obstruct the administration of justice" is obviously not implicated by the allegations

of the complaint.  All that is alleged is the filing of pleadings by an attorney for a

creditor.  Such actions do not satisfy the "in or near" requirement, and so cannot form the

basis for contempt.  *See American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531

(5th Cir. 1992).

The second sub-section, "Misbehavior of any of its officers in their official transactions," is also inapplicable.  While attorneys are often referred to as "officers of the court," they are clearly not "officers" for purposes of contempt proceedings under 18 U.S.C. § 401.  *Cammer v U.S.*, 350 U.S. 399, 404-05 (1956).  *See also U.S. v. Koubriti*, 305 F. Supp. 2d 723, 740 (E.D. Mich. 2003) (collecting later cases).

The third sub-section, "Disobedience or resistance to its lawful writ, process, order, rule, decree, or command" is also inapplicable, principally because there is no definitive order or direction from the **court**[14] on the matters which the Hecklers allege form the basis of the "contemptuous behavior" by Gonzalez.  A contempt finding (whether civil or criminal) under this section requires:  "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful; however, a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir.2006).  *See also In re Johnson*, 148 B.R. 532, 538 (Bankr. N.D. Ill. 1992).  The rule in the 11th Circuit is the same:  "A finding of civil contempt must be supported by clear and convincing evidence that 'the allegedly violated order was valid and lawful, . . . the order was clear and unambiguous, and the . . . alleged violator had the ability to comply with the order.'" *F.T.C. v. Leshin*, 618 F.3d 1221, 1232, (11th Cir. 2010) (*quoting Riccard v. Prudential Ins. Co.*, (307 F.3d 1277, 1296 (11th Cir. 2002)).  For criminal contempt, there is the added element of the violation of the order being "willful."  *See U.S. v. Straub*, 508 F.3d 1003,

---

[14] The reference to "its" in this subsection refers back to "court" in the introductory language.  Thus, there must be a "writ, process, order, rule, decree or command" by the court imposing the contempt for any contempt proceeding to stand.

1010 (11th Cir. 2007).   These same principles have been articulated by Florida

Bankruptcy Courts.[15]   *In re EZ Pay Services, Inc.*, 390 B.R. 445, 455 (Bankr. M.D. Fla.

2008).

Here, though, there is the utter absence of any order meeting these requirements

which the Amended Complaint alleges was violated.   The ostensibly contemptuous conduct

is listed at ¶ 184 of the Amended Complaint, and any reference to an order of any court

is entirely absent.

Accordingly, there is no valid assertion of "contempt" which the Hecklers can make

against Gonzalez, and since § 105 of the Code does not create any other private right of

action, Counts 5, and 6 must be dismissed with prejudice.

> *(b)*     *No private cause of action can be asserted under Rule 2016(a).*

Rule 2016(a) provides, in relevant part, that "[a]n entity seeking interim or final

compensation for services, or reimbursement of expenses, ***from the estate*** shall file an

application [for compensation and reimbursement of expenses]. . . . " Fed. R. Bankr. P.

2016(a) (Emphasis added).   Thus, Rule 2016(a) requires that an **estate professional**, that is,

a "professional person" employed by the bankruptcy estate pursuant to 11 U.S.C. §

327(a), file an application for compensation and reimbursement of expenses for services

rendered and costs incurred. *See In re Carter*, 2004 WL 5846718, *9 (Bankr. N.D. Ga.

June 22, 2004); *see also In re M.T.G. Limited, Inc.*, 2007 WL 2156378, *5 (Bankr. S.D. Fla.

July 26, 2007) (courts define a "professional person," *i.e.*, an estate professional, as being

---

[15] *Leshin* was also an appeal from the Southern District of Florida. 618 F.3d at
1221.

"limited to persons in those occupations which play a **central role in the administration of the debtor proceeding**.") (Emphasis added).

The case law is unclear as to whether there exists a private cause of action based upon Rule 2016(a), **a procedural rule**. Compare Moffitt v. America's Servicing Co. (In re Moffitt), 408 B.R. 249, 257-58 (Bankr. E.D. Ark. 2009), with Yancey v. Citifinancial, Inc. (In re Yancey), 301 B.R. 861, 868 (Bankr. W.D. Tenn. 2003). Even if such a claim exists, Rule 2016 does not apply to Gonzalez.

Gonzalez is not an estate professional (and the Hecklers do not allege otherwise) and has never sought to be employed by the Debtors' bankruptcy estate. Th[16]erefore, Rule 2016 simply does not apply to Gonzalez. Further, the Rules cannot as a matter of law, abridge, modify, or enlarge any substantive right. 28 U.S.C. § 2072 (the "Rules Enabling Act"). The Rules Enabling Act ensures that the Rules are construed so as not to alter substantive rights created by statute. See 28 U.S.C. § 2072(b). Construing Rule 2016(a) to apply to Gonzalez, which itself is **not** a creditor of the Debtors and did **not** seek (or receive) compensation from the estate, would violate the Rules Enabling Act. Rather, Gonzalez sought reimbursement for his client, Beneficial, for the fees and costs it had incurred in bringing the Stay Relief Motion, and the Adequate Protection Order directed payment to **Beneficial**, not Gonzalez. Moreover, it appears that the Hecklers never even paid such amounts.

Moffitt and related cases involve allegations of unauthorized charges by lenders or servicers, including the manner of collection efforts, while here Gonzalez itself never sought or collected fees or charges directly from mortgagors or the estate, but rather

---

[16] As discussed above, the attorneys' fee award at issue would not have been paid from property of the estate.

{A0887446.DOC }

sought reimbursement for Beneficial out of funds which were not property of the estate as indicated above.

In *Moffitt*, the defendant in the adversary proceeding was the creditor itself, who was alleged to have misapplied funds received from the debtors under a confirmed Chapter 13 plan, 408 B.R. at 252-54, or had included allegedly impermissible charges in a proof of claim, 408 B.R. at 254-56. Among those charges were the attorneys' fees incurred by the creditor. The court held that if the **creditor** wants reimbursement for such fees and costs, the **creditor** is obliged to file an application for reimbursement. 408 B.R. at 257-58 (also holding that no private right of action was available under § 105(a), but rather only an action for disgorgement or restitution). The *Moffitt* court did not authorize any relief against the law firm representing the creditor who was paid its fee **by the creditor** and not by the estate. Thus, the Rule 2016(a) compliance obligation, was the creditor's obligation, since the reimbursement sought was to the creditor for the creditor's attorneys' fee. The obligation would not be that of the creditor's attorney, since the creditor's attorney had already been paid by the creditor and was not seeking payment from the estate.

Similarly, in *In re Harris*, 297 B.R. 61 (Bankr. N.D. Miss. 2003), the Bankruptcy Court denied a creditor's motion to dismiss a claim founded upon allegedly improper post-petition, post-confirmation late charges based upon untimely payments – again, though, the relief sought was against the creditor itself because the creditor was the party receiving and applying the funds (payments under a confirmed Chapter 13 plan).

Even if Rule 2016(a) applied to Gonzalez, "there is no remedy itself for a failure to file...an application [for compensation and reimbursement of expenses]." *Yancey*, 301

B.R. at 868-71 (dismissing proposed class action suit based upon filing of proof of claim that included attorneys' fees where the creditor had not filed an application for compensation required by Rule 2016(a), and concluding that there is no private right of action for an alleged violation of Rule 2016(a), even when considered in conjunction with 11 U.S.C. § 105(a)).

Accordingly, the Hecklers' Rule 2016 claim against Gonzalez should be dismissed with prejudice.

### (ix)    Count 7 Fails to State a Cause of Action for "Breach of the Uniform Mortgage Covenants

The response to the Plaintiffs' Seventh Cause of Action for Breach of the Uniform Mortgage Covenants is simply that Gonzalez was not a party or alleged to be a party to the mortgage (or related documents) entered into by and between the Hecklers (or any other home buyer in the putative class contemplated by the Plaintiffs) and Beneficial.  *See Cruz v. Navy Federal Fin.* Group, 2010 WL 617387, *3 (N.D. Fla. Feb. 17, 2010) ("Obviously, if CUNA was not a party to the contract, it cannot be liable for breach of contract.") (citing *Blue Supply Corp. v. Novos Electro Mechanical, Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008)).

Accordingly, the Court should dismiss this claim with prejudice

### (x)    Count 8 Fails to State a Cause of Action for "Unauthorized Practice of Law"

There is no recognized independent cause of action for the unauthorized practice of law; damages, if any, arising as a result of the unauthorized practice of law must be asserted under **another legal theory**.  *See Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907 (Fla. 2010).  As such, the unauthorized practice of law claim must be dismissed with prejudice for failure to state a claim, and the Court need not consider whether the

"facts," as pled, meet the plausibility standard enunciated in *Twombly*.  *See, e.g., Morrison*, 2010 WL 2721397, *3.

Further, the Florida Supreme Court explained that "[t]o state a cause of action for damages under any legal theory that arises from the unauthorized practice of law, we hold that the pleading **must** state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law." *Goldberg*, 35 So. 3d at 907 (Emphasis added).  The Debtors do not allege that the Florida Supreme Court has determined that any services rendered by either of the LPS Defendants to lenders-loan servicers and their counsel constitute the unauthorized practice of law. This claim should be dismissed with prejudice.

(xi)     Count 9 Fails to State a Cause of Action for "Civil Conspiracy"

"In order to establish the existence of a civil conspiracy, [a] Plaintiff[] must demonstrate an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff." *American Federation of Labor-Congress of Indus. Org. v. City of Miami*, 650 F. Supp. 2d 1258, 1272 (S.D. Fla. 2009) (quotation omitted), *aff'd in part, dismissed in part*, 2011 WL 1233628 (11th Cir. April 5, 2011).  Gonzalez presumes that the underlying claims that purport to support the conspiracy cause of action are (i) fraudulent misrepresentation and concealment, (ii) violation of Rule 2016(a), (iii) violation of 28 U.S.C. § 155, (iv) violation of the automatic stay, (v) violating unidentified Rules presumably other than Rule 2016(a), (vi) breach of mortgage covenants, and (vii) fraud upon the Court.  Amended Complaint, ¶ 223.  This Memorandum has demonstrated the invalidity each of these claims (although the

first claim is presumably subsumed within the remaining claims and not separately set forth in the Amended Complaint).[17]

Because the underlying claims fail, there can be no conspiracy as a matter of law. *See, e.g., Rogers v. Nacchio*, 241 Fed. App'x 602, 609 (11th Cir. 2007); *Behrman v. Allstate Ins.* Co., 178 Fed. App'x 862, 863 (11th Cir. 2006).  As such, the Court should dismiss the conspiracy claim with prejudice.

(xii)   Count 10 Fails to State a Cause of Action for Violation of
18 U.S.C. § 155

Plaintiffs' purported cause of action for the alleged violation of Section 155 also fails.  Section 155 provides, in relevant part, that a party in interest, including a creditor, or an attorney for a creditor, that "knowingly and fraudulently enters into any agreement, express or implied, with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to an attorney for any party in interest for services rendered in connection therewith *from the assets of the estate* shall be fined under this title or imprisoned not more than one year, or both."  18 U.S.C. § 155 (Emphasis added).

First, as demonstrated above whether or not the Hecklers actually the payment required by the Adequate Protection Order, the funds from which such payments would be made were not property of the estate.

Further, this section is found in Title 18 of the U.S. Code which codifies federal *criminal* law.  This section does not support a private cause of action.  Taking Plaintiffs'

---

[17]To the extent Plaintiffs' conspiracy claim is based upon causes of action other than those set forth in the individual counts of the Complaint, such as common law fraud, Plaintiffs have failed to plead the individual elements of each such claim requiring dismissal of the count for conspiracy.  *Akin v. Pafec Ltd.*, 991 F.2d 1550, 1557-58 (11th Cir. 1993).

Section 155 claim to its logical conclusion, if the administrative fees paid to LDSI by Network Attorneys violate § 155, then so would every fixed-fee agreement between any law firm and its vendors such as process servers.  The Court should dismiss the Plaintiffs' Section 155 claim with prejudice.

(xiii)   Code Section 504 is Inapplicable

Based on the provision of administrative services, lenders-loan servicers and their counsel pay an administrative fee.  The administrative fee is a flat charge per task, not a percentage of fees charged by the Network Attorney to the lender-loan servicer.  The fees paid to Network Attorneys are determined by the servicer or lender's agreement with the Network Attorney (as reflected in the Network Agreement which provides that "[t]he Firm will be paid on invoices directly by the Client."  Network Agreement, § 5.  Fees due to LDSI from Gonzalez (or any other Network Attorney) are not contingent upon any fees that Gonzalez's client, here, Beneficial, might be awarded by the Court.  There is no factual basis for any allegation of compensation sharing.

The Plaintiffs assert that LDSI's agreement with its Network Attorneys violates Code Section 504.  While the Code regulates compensation sharing, it does so only under limited circumstances.  Section 504(a) limits fee sharing among lawyers and other professionals, but **only** as to those receiving fees pursuant to §§ 503(b)(2) and 503(b)(4), **neither** of which applies to Gonzalez.  Section 503(b)(2) applies only to professionals employed by a trustee, debtor in possession, or creditors' committee. Section 503(b)(4) applies only to attorneys for creditors that make certain contributions to the bankruptcy estate.  Sections 503(b)(2) and (b)(4) are inapplicable to Gonzalez which is neither an estate professional nor counsel for a creditor claiming fees for a substantial contribution to

the Hecklers' estate (or the estates of the purported class members). Therefore, Section 504 is inapplicable and this claim should be dismissed with prejudice.

**V.  Conclusion**

This adversary proceeding is just one of many that the Hecklers' counsel has filed in an effort to establish some basis for purported class claims.  The Amended Complaint does not and cannot state any viable cause of action based upon the facts presented and this Court lacks jurisdiction to address such claims *ab initio*. The Court should dismiss the Complaint in its entirety and with prejudice.

Respectfully submitted,

*/s/ Bruce D. Partington*
BRUCE D. PARTINGTON
Florida Bar Number: 871508
Clark, Partington, Hart, Larry, Bond & Stackhouse
P.O. Box 13010 (32591-3010)
125 West Romana Street, Suite 800
Pensacola, FL 32502
Phone: (850) 434-9200
Fax: (850) 432-7340
BPartington@cphlaw.com
Attorneys for Enrico G. Gonzalez, Esq.,
and Enrico G. Gonzalez, P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been furnished to Martin S. Lewis, Lewis & Jurnovoy, 1100 N. Palafox Street, Pensacola, FL 32501, and Peter J. Mougey, Levin Papantonio, 316 S. Baylen St., Suite 600, Pensacola, FL 32502-5996, via the Court's transmission of the Notice of Electronic Filing this 27th day of June, 2011.

*/s/ Bruce D. Partington*
BRUCE D. PARTINGTON

{A0887446.DOC }